UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

ADIRONDACK ADVERTISING, LLC,

                Plaintiff,

       -against-                                         8:12-CV-1684 (LEK/CRH)

CITY OF PLATTSBURGH, NEW YORK;
and JOSEPH McMAHON, in his capacity
as Building Inspector for the City of
Plattsburgh, New York,

                Defendants.

_____

**MEMORANDUM-DECISION and ORDER**

**I.    INTRODUCTION**

Plaintiff Adirondack Advertising, LLC ("Plaintiff"), brought this action for damages under 42 U.S.C. § 1983 and for declaratory relief under 28 U.S.C. § 2201, alleging that Defendants the City of Plattsburgh, New York, and Joseph McMahon, the building inspector for the City of Plattsburgh (collectively, "Defendants"), have violated Plaintiff's right to free speech. Dkt. No. 1 ("Complaint"). Defendants have moved to dismiss the Complaint for failure to state a claim upon which relief can be granted. Dkt. No. 8 ("Motion"); see FED. R. CIV. P. 12(b)(6). For the following reasons, the Motion is granted in part.

**II.    BACKGROUND**[1]

Plaintiff is an advertising corporation conducting business in the City of Plattsburgh, where it leases premises. Compl. ¶¶ 1, 10-11. Plaintiff sought to install a digital sign on those premises to sell advertising space to local businesses and to promote businesses who are tenants of the premises.

---

[1] The Court takes the factual allegations in Plaintiff's Complaint as true for the purpose of ruling on the Motion to dismiss. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Id. ¶ 15. The Plattsburgh City Code bans signs for advertising purposes unless a permit is first obtained from the building inspector. Id. ¶¶ 13-14; see PLATTSBURGH, N.Y., CODE ("Code") § 270-26, -26(C). On March 23, 2011, Plaintiff's representative met with the building inspector,[2] who advised Plaintiff that the premises was eligible for a sign of up to 150 square feet but that the Plattsburgh Zoning Board of Appeals might have concerns about a sign that large at that location. Compl. ¶¶ 17-18; see Code § 270-26(F)(2). Plaintiff therefore applied for a permit for a 90-square-foot digital sign for the premises. Compl. ¶¶ 18-19; see Code § 270-26(D). A permit was approved and issued to Plaintiff for a two-year period on March 30, 2011. Compl. ¶ 20.

On May 2, 2011, Plattsburgh's Common Council enacted a six-month moratorium on the installation of digital signs to prevent their "sudden proliferation" and to study their "public safety and aesthetic impact." Id. ¶ 24. Effective November 1, 2011, the Common Council amended the Code to add provisions specific to digital signs, including:

> Dimensions. Digital signs shall comply with the dimensional restrictions of Table A.
>
> Message Content. Digital Signs may not display Messages about goods or services that are not sold and delivered or provided on the premises where the sign is located. The intent of this section is to prohibit what is commonly referred to as "billboards." The foregoing notwithstanding, a Digital Sign may display Messages about public emergencies and public events.

Id. ¶¶ 25, 27; Code § 270-26(Q)(4), (6); see Dkt. No. 1-1. The Code defines "billboard" as "any sign which is not appurtenant to any business conducted on the property where the sign is located." Code § 270-26(B). On June 21, 2012, Plaintiff completed installation of its 90-foot digital sign and entered into subleases with third-party businesses who then used the sign to advertise their goods

---

[2] At that time, the building inspector was Richard Perry, not Defendant McMahon. Compl. ¶ 17.

and services.  Compl. ¶¶ 28-29.  On July 20, 2012, Defendant McMahon, acting for Plattsburgh, issued a Notice of Violation to Plaintiff because the 90-foot digital sign exceeded the Code's size limits and displayed messages for offsite businesses.  Id. ¶ 30; Dkt. No. 1-2.  The Notice of Violation directed Plaintiff to modify the size of the sign and eliminate advertisements for offsite businesses by July 23, 2012, assessed a $250 fine, and provided that each week of noncompliance would constitute a separate additional offense.  Compl. ¶¶ 31-32.

Plaintiff has not brought the sign into compliance with the Code.  Id. ¶ 33.  Plattsburgh agreed to postpone levying fines until Plaintiff exhausted its administrative remedies for review of the Notice of Violation.  Id. ¶ 34.  On October 15, 2012, the Plattsburgh Zoning Board of Appeals upheld the issuance of the Notice of Violation and resumed levying weekly fines of $250 upon Plaintiff.  Id. ¶¶ 35-36.  Plaintiff then commenced this action on November 14, 2012, claiming that the Code provisions relating to digital signs are constitutionally invalid on their face and as applied to Plaintiff because they discriminate against offsite advertising, impose stricter size restrictions on digital signs than on nondigital signs, favor governmental speech over commercial speech, and favor commercial speech over noncommercial speech.  See generally id.

## III. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see FED. R. CIV. P. 12(b)(6).  "[A] court must accept all well-pleaded factual allegations made by the non-moving party as true and

'draw all inferences in . . . the non-moving party's favor,'" Brown v. Kopek, No. 11-CV-0016, 2011 WL 3737921, at *3 (N.D.N.Y. Aug. 24, 2011) (Kahn, J.) (quoting In re NYSE Specialists Sec. Litig., 503 F.3d 89, 95 (2d Cir. 2007) (Sotomayor, J.)), but "[a]ny legal conclusions, deductions, or opinions couched as factual allegations are not accorded a presumption of truthfulness." Id. A court may also consider any document attached as an exhibit, incorporated by reference, or otherwise integral to the complaint. See, e.g., Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555).

## IV. DISCUSSION

"To state a claim under Section 1983, a plaintiff must show: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation, [and] (4) damages." Rahman v. Fisher, 607 F. Supp. 2d 580, 584 (S.D.N.Y. 2009) (quoting Roe v. City of Waterbury, 542 F.3d 31, 36 (2d Cir. 2008) (internal quotation marks omitted)). The only point of contention here is whether Plaintiff has been deprived of its constitutional right to free speech. See generally Dkt. Nos. 8-8 ("Memorandum"); 11 ("Response"); 14 ("Reply").

The First Amendment to the United States Constitution states, "Congress shall make no law . . . abridging the freedom of speech, or of the press . . . ." This prohibition applies generally to state governments by virtue of the Fourteenth Amendment. See U.S. CONST. amend. XIV, § 1 ("No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ."); 44 Liquormart, Inc. v. Rhode Island, 517 U.S. 484, 489 n.1 (1996) ("[T]he [First] Amendment applies to the States under the Due Process Clause of the Fourteenth Amendment."); Shelley v. Kraemer,

334 U.S. 1, 15 (1948) ("The federal guarantee of due process extends to state action through its judicial as well as through its legislative, executive, or administrative branch of government." (quoting Brinkerhoff-Faris Trust & Sav. Co. v. Hill, 281 U.S. 673, 680 (1930) (internal quotation marks omitted))).

Plaintiff's advertisements are commercial speech, which receives diminished First Amended protection. See, e.g., Zauderer v. Office of Disciplinary Counsel, 471 U.S. 626, 637 (1985). "Central Hudson sets forth a four-part test to determine whether commercial speech is protected by the First Amendment." United States v. Caronia, 703 F.3d 149, 164 (2d Cir. 2012) (citing Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y., 447 U.S. 557 (1980)).

> First, as a threshold matter, to warrant First Amendment protection, the speech in question must not be misleading and must concern lawful activity. Second, to justify regulations restricting speech, the asserted government interest must be substantial. Third, the regulation must directly advance the governmental interest asserted "to a material degree." . . . Fourth, the regulation must be "narrowly drawn," and may not be more extensive than necessary to serve the interest.

Id. (citations omitted) (quoting 44 Liquormart, 517 U.S. at 505; Cent. Hudson, 447 U.S. at 565-66). "Under the commercial speech inquiry, it is the [government's] burden to justify its content-based law as consistent with the First Amendment." Id. (quoting Sorrell, 131 S. Ct. at 2667) (alteration in original) (internal quotation marks omitted); see Long Island Bd. of Realtors, Inc. v. Inc. Vill. of Massapequa Park, 277 F.3d 622, 626 (2d Cir. 2002) (holding that "Central Hudson provides the basis for considering the constitutionality of regulation of commercial speech" even where the regulation is alleged to be content-based).

Plaintiff asserts that the Code is unconstitutional both on its face and as applied to Plaintiff; however, "for reasons relating both to the proper functioning of courts and to their efficiency, the lawfulness of the particular application of the law should ordinarily be decided first." Bd. of

Trustees v. Fox, 492 U.S. 469, 485 (1989).

### A. Honest Speech About Lawful Activity

Plaintiff alleges that the advertisements on its sign concern lawful activity and are not misleading. See Compl. ¶¶ 41, 52; Dkt. No. 11 ("Response") at 7. Defendant has not suggested otherwise. See generally Dkt. Nos. 8-8 ("Memorandum"); 14 ("Reply"). Accordingly, Plaintiff has sufficiently pleaded the first Central Hudson inquiry. Defendants bear the burden of satisfying the remaining three inquiries, but may do so on a motion to dismiss if the inquiries are satisfied as a matter of law based on the facts pleaded in the Complaint. Cf. In re Sept. 11 Prop. Damage and Bus. Loss. Litig., 481 F. Supp. 2d 253, 258 (S.D.N.Y. 2007) (observing that affirmative defenses may be raised on a motion to dismiss).

### B. Substantial Government Interest

Defendants' asserted government interests, as recited in the Code, are promoting traffic safety and curating city aesthetics. Mem. at 3-6; see Code § 270-26(A). These interests are unquestionably substantial. See, e.g., Members of City Council v. Taxpayers for Vincent, 466 U.S. 789, 806-07 (1984); Metromedia, Inc. v. City of San Diego, 453 U.S. 490, 508 (1981) ("[T]he twin goals that the ordinance seeks to further—traffic safety and the appearance of the city—are substantial governmental goals."), quoted in Clear Channel Outdoor, Inc. v. City of New York, 594 F.3d 94, 103 (2d Cir. 2010) (collecting cases); Beck v. Coats, No. 11-CV-0420, 2012 WL 2990017, at *5 (N.D.N.Y. July 19, 2012).

Plaintiff pins its hopes on National Advertising Co. v. Town of Babylon, 900 F.2d 551 (2d Cir. 1990). Resp. at 12-13. There, the court of appeals affirmed the district court's holding that two towns' billboard ordinances because, "[e]ven though one might assume that the towns were

6

interested in traffic safety and aesthetics, the ordinances include[d] no such statement of purpose." Nat'l Adver., 900 F.2d at 555. One town's code provided, in a preamble to another section, that the code "generally was adopted for the promotion of health, safety, morals, comfort, convenience and the general welfare," and a subsection of the sign ordinance allowed "certain exceptions to the ordinance [to] take aesthetics into account." Id. The other town's ordinance forbade "the obstruction of traffic and the creation of a hazard to the health and welfare of the general public," and included a provision explicitly requiring "consideration of aesthetics, light, air and the health and welfare of the public" in variance applications. Id. The court of appeals agreed with the district court that these ordinances were unconstitutional because they did not "identify the particular governmental interests sought to be advanced and the towns failed to introduce any extrinsic evidence of the interests underlying the ordinances." Id. at 556.

Plaintiff contends that the "Purpose" subsection of Plattsburgh's ordinance is similarly general and fails to provide the rationale for its enactment. See Resp. at 13 (quoting Code § 270-26(A)). To the contrary, however, the Code clearly states its purpose to address traffic safety and aesthetics: "The purpose of this section is to . . . reduce sign distractions and obstructions that may contribute to traffic accidents . . . and to curb deterioration of natural beauty, open space and community environment." Code § 270-26(A). Nor does National Advertising provide the support Plaintiff hopes for: there, the district court distinguished the towns whose ordinances were overly general and failed to state their purpose from two other towns whose ordinances "properly cite[d] as their goals the enhancement of aesthetics and the improvement of traffic safety." 900 F.2d at 554

(citing Metromedia, 453 U.S. at 507-08).³ The court of appeals did not disturb the district court's reasoning in that respect. See id. at 555-57. Accordingly, Defendants have satisfied the second Central Hudson inquiry.

### C. Advancement of Government Interest

Plaintiff argues that even if Defendants satisfy the second Central Hudson inquiry, they fail the third, because they have not articulated how offsite messages or digital signs over the prescribed size threaten the government's interests any more than permitted signs. See Resp. at 14-16. Metromedia disposed of the same argument at length:

> If the city has a sufficient basis for believing that billboards are traffic hazards and are unattractive, then obviously the most direct and perhaps the only effective approach to solving the problems they create is to prohibit them. . . .
> . . . It is asserted that the record is inadequate to show any connection between billboards and traffic safety. . . . We . . . hesitate to disagree with the accumulated, common-sense judgments of local lawmakers and of the many reviewing courts that billboards are real and substantial hazards to traffic safety. . . .
> . . . It is not speculative to recognize that billboards by their very nature, wherever located and however constructed, can be perceived as an "esthetic harm." . . . Such esthetic judgments are necessarily subjective, defying objective evaluation, and for that reason must be carefully scrutinized to determine if they are only a public rationalization of an impermissible purpose. But there is no claim in this case that [Defendants] ha[ve] as an ulterior motive the suppression of speech, and the judgment involved here is not so unusual as to raise suspicions in itself.
> It is nevertheless argued that the city denigrates its interest in traffic safety and beauty and defeats its own case by permitting onsite advertising and other specified signs. . . . Despite the apparent incongruity, this argument has been rejected, at least implicitly, in all of the cases sustaining the distinction between offsite and onsite

---

³ Moreover, subsequent court of appeals decisions may have abrogated National Advertising's requirement that an ordinance state its purpose. See Clear Channel, 594 F.3d at 103 n.10 ("[W]e have held that a governmental entity need not rely on the justifications offered when the regulation was enacted, since any insufficiency in the original motivation does not diminish other interests that the restriction may now serve. Thus, to the extent that Plaintiffs assert that the City's proffered justifications for the Zoning Resolution were not raised at the time of its enactment, such complaints do not further their position in this litigation." (alterations incorporated) (citation and internal quotation marks omitted)).

commercial advertising. We agree with those cases . . . .

453 U.S. at 508-11 (footnotes omitted); accord Taxpayers for Vincent, 466 U.S. at 810-11 & n.28; Clear Channel, 594 F.3d at 106-07; see also Naser Jewelers, Inc. v. City of Concord, 513 F.3d 27, 35 (1st Cir. 2008) ("It is given that a billboard can constitute a traffic hazard. It follows that [signs with electronically changeable messages], which provide more visual stimuli than traditional signs, logically will be more distracting and more hazardous."); Nat'l Adver., 900 F.2d at 556 ("[C]ourts have taken judicial notice of a common-sense linkage between a stated government interest and a restriction in order to assess whether the third part of the Central Hudson test . . . has been satisfied.").

Municipalities need not conduct studies to prove that restrictions on certain types of signs support their stated interests; "Justice Brennan suggested the need for such evidence in his concurring opinion in Metromedia, but seven justices rejected his position." Naser Jewelers, 513 F.3d at 35; accord Taxpayers for Vincent, 466 U.S. at 807 n.25 ("Justice Brennan's analysis [in Metromedia] was expressly rejected by a majority of the Court."); see also, e.g., Ackerley Commc'ns of Nw. Inc. v. Krochalis, 108 F.3d 1095, 1099-100 (9th Cir. 1997) ("As a matter of law[,] Seattle's ordinance, enacted to further the city's interest in esthetics and safety, is a constitutional restriction on commercial speech without detailed proof that the billboard regulation will in fact advance the city's interests."). Accordingly, Defendants have satisfied the third Central Hudson inquiry.

**D. Fit of Regulation to Government Interest**

Although a regulation of commercial speech must "not be more extensive than necessary," Caronia, 703 F.3d at 164, "[t]he dictates of Central Hudson do not require [a] [c]ity to adopt the

9

'least restrictive means' of advancing its asserted interests." Clear Channel, 594 F.3d at 104 (quoting Fox, 492 U.S. at 477).[4] Instead, the fit need only be "reasonable; . . . not necessarily the single best disposition but one whose scope is in proportion to the interest served." Id. (quoting Fox, 492 U.S. at 480). If the fit is reasonable, a reviewing court should defer to a city's judgment. Id. (citing Ward v. Rock Against Racism, 491 U.S. 781, 800 (1989)). Importantly, "the question is not whether a municipality can 'explain' why a . . . limitation 'detract[s] more from the aesthetics of the [c]ity than signs with smaller sign faces'; it is whether the regulation is '*substantially broader* than necessary to protect the [c]ity's interest in eliminating visual clutter' and advancing traffic safety." Prime Media, Inc. v. City of Brentwood, 398 F.3d 814, 822 (6th Cir. 2005) (quoting Taxpayers for Vincent, 466 U.S. at 808) (second and third alterations in original); accord Metro Lights, L.L.C. v. City of Los Angeles, 551 F.3d 898, 912 (9th Cir. 2009) ("[T]he narrow tailoring requirement guards against over-regulation rather than under-regulation." (citing Central Hudson, 447 U.S. at 565)).

---

[4] Plaintiff's reliance on Burkhart Adver., Inc. v. City of Auburn, 786 F. Supp. 721 (N.D. Ind. 1991), and Park Outdoor Adver. of N.Y., Inc. v. Town of Onondaga, 708 F. Supp. 2d 241 (N.D.N.Y. 2010), is misplaced. The Burkhart court was "not convinced that a total ban of off-premise billboards is the most 'narrowly drawn restriction' that could accomplish [the] defendants['] objectives of improving safety and aesthetics," and required a showing by the defendants as to "why an outright ban of off-premise billboards [was] the only effective approach to solving these two stated problems." 786 F. Supp. at 729-30 (citing Metromedia, 453 U.S. at 528 (Brennan, J., concurring)). That approach was incorrect. See Fox, 492 U.S. at 476-77 (rejecting as dicta formulations of Central Hudson interpreting "necessary" strictly to require that a municipality use only the least restrictive means); id. at 486 n.1 (Blackmun, J., dissenting) (criticizing the majority on this point); Taxpayers for Vincent, 466 U.S. at 807 n.25 ("Justice Brennan's analysis [in Metromedia] was expressly rejected by a majority of the Court."). Similarly, the Park Outdoor court, despite finding it "arguable that a billboard prohibition may serve to reduce distractions to drivers due to its proximity to an interstate highway," erroneously concluded that the ordinance was unconstitutional because the town failed to provide a study showing that the prohibition actually had this salutary effect. 708 F. Supp. 2d at 246-47; see Naser Jewelers, 513 F.3d at 35 ("[Municipalities are] under no obligation to do such studies or put them into evidence.").

"[I]t is well-settled law that a ban on all off-site, commercial signs is permissible under the First Amendment because it reaches no further than necessary to achieve the City's goals of traffic safety and aesthetics." Paramount Contractors & Developers, Inc. v. City of Los Angeles, No. CV 08-5653, 2011 WL 8804642, at *12 (C.D. Cal. Feb. 7, 2011) (citing Maldonado v. Morales, 556 F.3d 1037, 1046 (9th Cir. 2009); Outdoor Media Grp., Inc. v. City of Beaumont, 506 F.3d 895, 905 (9th Cir. 2007)). "If a complete prohibition would be sufficiently narrowly tailored, then a partial one must also be." Id. (quoting Metro Lights, 551 F.3d at 912). Thus, the Code's regulations, as applied to Plaintiff, satisfy the fourth Central Hudson inquiry and are constitutionally valid: as a matter of law, bans on offsite commercial advertising are permissible,[5] and Defendants can reasonably require Plaintiff's digital sign to be smaller than nondigital signs because of the former's inherently more distracting, and thus more hazardous and possibly less aesthetically pleasing, nature. See Fox, 492 U.S. at 482 ("The person invoking the commercial-speech narrow-tailoring rule asserts that *the acts of his that are the subject of the litigation* fall outside what a properly drawn prohibition could cover.").[6] Plaintiff's § 1983 claims are therefore dismissed insofar as they

---

[5] In arguing that the Code unconstitutionally prohibits offsite advertisements, Plaintiff points only to Code § 270-26(Q)(6), which specifically prohibits offsite advertisements on digital signs. See, e.g., Compl. ¶¶ 44-45. However, this is consistent with the Code's general prohibition of all offsite advertising. See Code § 270-26(G)(8) ("It shall be unlawful for any person to erect, alter or relocate any billboard sign as defined in this section."); id. § 270-26(B) (defining "billboard" as "[a]ny sign which is not appurtenant to any business conducted on the property where the sign is located); see also id. § 270-26(Q)(6) ("The intent of this section is to prohibit what is commonly referred to as 'billboards.'").

[6] For example, unlike the ordinance at issue in Metromedia, which banned "billboards *designed to be viewed from streets and highways*," 447 U.S. at 508 (emphasis added), Plattsburgh's Code bans *all* signs in public view. See Code § 270-26(C) ("It shall be unlawful for any person to erect, alter, establish or relocate within the City of Plattsburgh any sign, as defined in this section, without first obtaining a sign permit . . . ."); see also id. § 270-26(B) (defining "sign" as "every sign, billboard, bulletin board, digital sign, freestanding sign, wall sign, window sign, roof sign, illuminated sign and projecting sign and shall include any letter, word, number, model, mural,

11

were brought on an as-applied basis.

**E. Facial Challenge**

When an as-applied challenge fails, a facial challenge follows. See Fox, 492 U.S. at 485-86. Defendants correctly assert that Plaintiff cannot demonstrate that the Code has no constitutional application. See Mem. at 9-10; Reply at 7-8. The Court's dismissal of Plaintiff's as-applied challenges compels that conclusion. However, facial challenges under the First Amendment do not require a plaintiff to demonstrate that a law is invalid in all applications. "There are two quite different ways in which a statute or ordinance may be considered invalid 'on its face'—either because it is unconstitutional in every conceivable application, or because it seeks to prohibit such a broad range of protected conduct that it is unconstitutionally 'overbroad.'" Taxpayers for Vincent, 466 U.S. at 796. A First Amendment overbreadth challenge is an exception to the general ban on third-party standing and allows a plaintiff to invoke the rights of parties not before a court even if the challenged law might constitutionally be applied to the plaintiff. See Fox, 492 U.S. at 482-83.[7] Although third-party commercial speech cannot be invoked to support an overbreadth challenge, a plaintiff whose speech is commercial may invoke the noncommercial speech of third parties to do

---

decoration, banner, flag, o[r] lights used or placed as an announcement or declaration to identify, advertise or promote the interest of any person when the same is placed in view of the general public from outside the structure on which[] the sign is placed"). If Plaintiff had alleged that *its* sign was not visible from the street, and therefore not capable of distracting a driver, the Code would be, insofar as it applied to Plaintiff, unreasonably overbroad in relation to its goal of promoting traffic safety, though perhaps not in relation to its goal of public aesthetics if the sign were otherwise still in public view.

[7] "There is an exception to the capable-of-constitutional-application rule recognized in our jurisprudence for facial challenges based upon First Amendment free-speech grounds. We have applied to statutes restricting speech a so-called 'overbreadth' doctrine, rendering such a statute invalid in all its applications (*i.e.*, facially invalid) if it is invalid in any of them." Nat'l Endowment for the Arts v. Finley, 524 U.S. 569, 618 (1998) (alterations incorporated) (internal quotation marks omitted).

so. Id. at 481.

Here, Plaintiff alleges, among other things, that the Code favors commercial speech over noncommercial speech by banning all signs and then permitting only specified categories of speech. Compl. ¶ 65. Plaintiff also alleges that the Code establishes content-based restrictions on speech. Compl. ¶ 63. Defendants counter that Code § 270-26(K)(1)(l), which exempts charitable and political signs from certain of the Code's regulations, sufficiently protects First Amendment rights. Reply at 7-8. National Advertising dictates that Plaintiff is correct.

In National Advertising, the court of appeals described how municipalities responded to the Supreme Court's Metromedia decision by adding provisions to their sign ordinances to permit noncommercial messages wherever commercial messages were allowed. 900 F.2d at 556-57; see id. at 557 (giving as an example, "Any sign authorized in this ordinance is allowed to contain noncommercial copy in lieu of other copy"). Such a provision ensures that, insofar as a municipality tolerates billboards at all, it does not limit their content to commercial messages. See id. at 556 ("[A] city may not conclude that the communication of commercial information concerning goods and services connected with a particular site is of greater value than the communication of noncommercial messages." (quoting Metromedia, 453 U.S. at 513)). "Although it would have been a simple matter to draft such a provision," the court of appeals held that a town's failure to do so caused its sign ordinance to violate the First Amendment. Id. at 557. Plattsburgh's Code contains no such provision. See generally Code. Accordingly, Plaintiff has properly stated a claim for facial invalidity.

Moreover, the court of appeals held in National Advertising that

[t]he district court properly followed Metromedia in concluding that the exceptions to the ban for temporary political signs and for signs identifying a grand opening, parade,

13

festival, fund drive or other similar occasion impermissibly discriminate between types of noncommercial speech based on content.

900 F.2d at 557. "With respect to noncommercial speech, the city may not choose the appropriate subjects for public discourse . . . ." Metromedia, 453 U.S. at 515, quoted in National Advertising, 900 F.3d at 557. Therefore, the specified exceptions in Plattsburgh's Code, see Code § 270-26(K)(1), do not adequately protect First Amendment rights; to the contrary, they render the Code constitutionally infirm. Plaintiff has properly stated a claim for facial invalidity on this basis as well. See Metromedia, 453 U.S. at 521 ("Because the . . . ordinance reaches too far into the realm of protected speech, we conclude that it is unconstitutional on its face.").

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendants' Motion (Dkt. No. 8) is **GRANTED** as to Plaintiff's as-applied claims and **DENIED** as to Plaintiff's facial claims; and it is further

**ORDERED**, that Plaintiff's as-applied claims are **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties.

**IT IS SO ORDERED.**

DATED:   September 30, 2013
         Albany, NY

_Lawrence E. Kahn_
Lawrence E. Kahn
U.S. District Judge